# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **V.** | § | **CASE NO. 3:18-CR-638-S** |
| | § | |
| **TERRANCE LUKE (01)** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the referral of the District Judge, Doc. 140, before the Court is Defendant's *Motion to Withdraw Guilty Plea*, Doc. 133. For the reasons stated here, Defendant's motion should be **DENIED**.

## I. BACKGROUND

By an Indictment filed December 18, 2018, Defendant Terrance Luke ("Defendant Luke") is charged with Conspiracy to Commit Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. § 1594 (Count One) and Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. § 1591(a)&(b)(1) (Counts Two and Three). Doc. 21 at 1-5. On February 27, 2020, Defendant Luke, with the assistance of appointed counsel, Assistant Federal Public Defender Sherylynn Kime-Goodwin ("Attorney Kime-Goodwin"), appeared before United States Magistrate Judge Rebecca Rutherford and pled guilty to Count Three of the Indictment pursuant to a Plea Agreement that, *inter alia*, reduced his maximum imprisonment exposure from life to the statutory minimum of 15 years. Doc. 60 at 3 (*Plea Agreement*); Doc. 73 (*Report and Recommendation*); Doc. 128 (*Transcript of Rearraignment Hearing*). No objections were filed to the Magistrate Judge's *Report* recommending that the District Judge accept the guilty plea, and on December 22, 2020, District Judge Karen Gren Scholer accepted

the *Report and Recommendation*, accepted Defendant Luke's guilty plea, and adjudged him guilty of Sex Trafficking by Force, Fraud, and Coercion, as alleged in Count Three of the Indictment.  Doc. 77.

On April 6, 2020, Attorney Kime-Goodwin moved to withdraw as counsel due to an apparent conflict of interest, explaining:

> Counsel understands that Mr. Luke is now representing that he wishes to withdraw his guilty plea. Mr. Luke is also aware that the deadline for objecting to the Magistrate Judge's recommendation has passed. Mr. Luke's comments to Counsel make it clear that Mr. Luke is attempting to argue that he tried to contact Counsel and in fact told Counsel at some point during his guilty plea hearing on February 27, 2020, that he did not wish to plead guilty. Mr. Luke's recollections are not the same as Counsel's recollections.

Doc. 83 at 3.  On May 13, 2020, the motion to withdraw was granted, Doc. 89, and Attorney Kambira Jones Morgan ("Attorney Morgan") was substituted as appointed counsel for Defendant Luke, Doc. 90.  In the interim, on April 30, 2020, the Presentence Report ("PSR") was filed. Doc. 87-1.  Attorney Morgan filed serial "Joint" motions for continuance of the sentencing hearing and PSR objection periods on June 23, 2020, Doc. 95 (citing her recent entry in the case), and October 23, 2021, Doc. 99 (citing counsel's health issues).  Each motion was granted. Doc. 96; Doc. 100.

Ultimately, on February 9, 2021, Defendant Luke's current counsel, Tim Menchu ("Attorney Menchu"), was substituted as counsel of record.  Doc. 109; Doc. 110.  The instant *Motion to Withdraw Guilty Plea* was filed June 21, 2021.

An evidentiary hearing was held on August 13, 2021, at which Defendant Luke appeared in person and through counsel, Attorney Menchu, and the Government appeared by and through Assistant United States Attorney Nicole Dana.  Doc. 152.  After considering the pleadings, applicable law,  evidentiary proffers, and  arguments of counsel, the Court finds that Defendant

Luke's claims (1) of his actual innocence and (2) that his guilty plea was not knowing and voluntary lack merit.  As such, Defendant Luke has failed to meet his burden to justify the withdrawal of his guilty plea.

## II. APPLICABLE LAW

"[I]t is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence.  Instead, the right to do so is within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion." *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir. 1981) (citations omitted).  Indeed, a district court may permit a defendant to withdraw his guilty plea prior to sentencing for "any reason the granting of the privilege seems fair and just.'" *United States v. Carr*, 740 F.2d 339, 343 (5th Cir. 1984) (cited and quoted cases omitted).  In determining whether to permit a defendant's withdrawal of his guilty plea under this standard, a district court should consider seven factors: (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. *Id.* at 343-44.  These factors are considered under the totality of the circumstances, and it is the defendant's burden to establish that withdrawal of his guilty plea is justified. *Id.* at 344.

## III. ANALYSIS

### A. Assertion of Actual Innocence

With respect to the first factor, whether the defendant has asserted his innocence, Defendant Luke avers such in his motion. *See* Doc. 133 at 2 ("In this case, the defendant is

asserting his innocence.").  However, Defendant Luke offers no evidence that supports his contention.

At the evidentiary hearing, Defendant Luke offered copies of email exchanges between himself and his then attorney for *in camera* review.  The exchanges can be summarized as follows:

- On January 22, 2020, Defendant Luke emailed Attorney Kime-Goodwin discussing the impending trial and evidence against him and concluded, "I want you to fight for me like you believe me im not interested in taking a plea I want to prove my innoce im not going to be a government snitch just so that I can help them in trapp other people"[1] (errors in original).

- Attorney Kime-Goodwin replied on January 30, 2020, stating in pertinent part that she planned to visit Defendant Luke to discuss a new plea offer from the Government for the mandatory minimum sentence of 15 years' imprisonment with no requirement of cooperation.

- Defendant Luke sent an email to Attorney Kime-Goodwin on February 4, 2020—after he had signed the plea papers but before the rearraignment hearing was scheduled or held—stating, "DO NOT SUMMIT [sic] THAT PLEA PLEASE GIVE ME SOME TIME TO THINK  THANK YOU TERRENCE LUKE."

The Court notes that in the January 22nd email, sent before Defendant Luke signed the Plea Agreement, Doc. 60 at 7-8, and Factual Resume, Doc. 59 at 4, on February 4, 2020, he clearly only mentions wanting "to prove [his] innocence" in the context of rejecting the Government's offer of cooperation and preparing instead for his impending trial.  Further, his February 4th email only requests more time for contemplation before the plea papers are filed. Defendant Luke offers evidence of no other communication after that in which he expresses that

---

[1] Although the reason for defense counsel's request for the Court to do so was unclear, the Court nevertheless reviewed all copies offered by defense counsel of the email communications between Attorney Kime-Goodwin and Defendant *in camera*, without objection from the Government.

he had actually changed his mind about pleading guilty after thinking it over. More importantly, however, any assertion of actual innocence directly contradicts Defendant Luke's statements at the February 27, 2020 rearraignment hearing, when he admitted under oath that he had committed all of the essential elements of the crime, Doc. 128 at 11, and that the stipulated facts in the Factual Resume supporting his guilty plea were true and correct, Doc. 128 at 11-12.

In sum, Defendant Luke has fallen pitifully short of establishing his actual innocence. His assertions are belied by the record. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("a defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath") (citing *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)); *see also Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. . . ."); *Carr, 740 F.2d at 344* ("[Innocence] claim alone is far from being sufficient to overturn denial of a withdrawal motion. Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right." (citation omitted)).

This *Carr* factor weighs against permitting Defendant Luke to withdraw his guilty plea.

**B. Delay in Filing Motion to Withdraw**

Although Defendant Luke was specifically admonished at the rearraignment hearing that he had 14 days from the filing of the Magistrate Judge's report recommending that his guilty plea be accepted to object, Doc. 128 at 19, no objection was filed. Subsequently, the *Report and Recommendation* was accepted, and Defendant Luke was adjudged guilty on March 18, 2020. Doc. 77. The first evidence of Defendant Luke's desire to withdraw his guilty plea was Attorney Kime-Goodwin's motion to withdraw filed April 6, 2020—six weeks after Defendant Luke's guilty plea—and triggered by her dispute of his claim that "he tried to contact [her] and in fact

told [her] at some point during his guilty plea hearing on February 27, 2020, that he did not wish to plead guilty." Doc. 83 at 3. At the August 13, 2021 evidentiary hearing, defense counsel asserted that, due to the COVID-19 pandemic, Defendant Luke was unable to contact Attorney Kime-Goodwin regarding his desire to withdraw. Even if true, that does not explain the further lengthy delay.

There was no claim made during the evidentiary hearing that Defendant Luke was unable to contact Attorney Morgan during the nearly nine months she represented him. Yet Attorney Morgan makes no mention of Defendant Luke's desire to withdraw his guilty plea in any of her filings. *See* Doc. 95; Doc. 99; Doc. 109.[2] And it was more than four months after Attorney Menchu's appointment as counsel, Doc. 110, and nearly 16 months following the entry of Defendant Luke's guilty plea, that the *Motion to Withdraw Guilty Plea*, Doc. 133, was filed.

Under the totality of the circumstances, this *Carr* factor weighs against permitting Defendant Luke to withdraw his guilty plea.

### C. Close Assistance of Counsel Was Available

Defendant Luke had the close assistance of counsel both before and at the time of his guilty plea. At the rearraignment hearing, Defendant Luke confirmed unequivocally that he (1) had a full opportunity to discuss his case and whether he should plead guilty with his counsel, that he understood the information and advice provided by his counsel, and was satisfied with Attorney Kime-Goodwin's representation, Doc. 128 at 8; and (2) discussed both the Plea Agreement and Factual Resume with his counsel before signing them, Doc. 128 at 12, 14.

---

[2] Although there is nothing the Court can glean from Attorney Morgan's filings regarding her communications with Defendant during the representation, she specifically mentions speaking with Defendant in the Certificate of Conference in her *Unopposed Motion to Withdraw and Appoint New Counsel*. Doc. 109 at 3.

Further, the transcript of the hearing does not indicate that Defendant Luke was at all hesitant during rearraignment or that the hearing was paused so that he could discuss any matter privately with counsel who stood near throughout.

This *Carr* factor also weighs against permitting Defendant Luke to withdraw his guilty plea.

### D.  Guilty Plea Was Knowing and Voluntary

Despite Defendant Luke's self-serving and conclusory assertions to the contrary, the record establishes that his guilty plea was knowing and voluntary.  To be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made.  *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).  In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel.  *United States v. Shepherd*, 880 F.3d 734, 740-41 (5th Cir. 2018); *see also Boykin v. Alabama*, 395 U.S. 238, 244 (1969) (finding that to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence").  Here, a review of the *Plea Agreement*, Doc. 60, the *Factual Resume*, Doc. 59, and the *Transcript of Rearraignment Hearing*, specifically Defendant Luke's sworn declarations therein, Doc. 128, establishes that he fully understood the process and consequence of pleading guilty before doing so.

Specifically as to Defendant Luke's suggestion that he did not understand that as a consequence of his plea he would be required to register under SORNA (Sex Offender Registration and Notification Act), the exchange at rearraignment regarding this requirement reveals its lack of merit:

ATTORNEY DANA: Your Honor, I apologize.  It was an oversight in the maximum penalties that I did not also advise the Defendant of the registration requirement that is required by his plea of guilty to this count.

THE COURT: All right.

ATTORNEY DANA: So I would also notice for him that he is required to register under the SORNA Act.

THE COURT: All right.  So that is an additional consequence of pleading guilty to the crime that you are charged with.

Do you understand that additional consequence?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right.  Does that change how you feel about wanting to enter your guilty plea?

THE DEFENDANT: No, ma'am.

THE COURT: Are you ready to enter your plea, then?

THE DEFENDANT: Yes, ma'am.

Doc. 128 at 17-18.  Moreover, Defendant Luke was clearly aware of the SORNA registration requirement and what the acronym stood for well before that point in the rearraignment hearing because he had signed a very detailed acknowledgement of it in his Plea Agreement weeks before.  Doc. 60 at 7-8.  On this record, Defendant Luke's argument that his guilty plea was not knowing and voluntarily because there was "no discussion to determine whether [Defendant Luke] was aware what 'SORNA' means and whether he was voluntarily and knowingly acquiescing to that condition and consequence of his plea," Doc. 133 at 3, appears disingenuous and is wholly frivolous.

Finally, the findings of the presiding Magistrate Judge, who directly addressed Defendant Luke and had the opportunity to observe his demeanor throughout the rearraignment hearing and thus was in the best position to judge the veracity of his answers given under oath, should be

granted great weight.  Magistrate Judge Rutherford specifically found that Defendant Luke was "fully competent and capable of entering an informed plea, and . . . that [his] plea of guilty to Count Three of the indictment [was] knowing and voluntary."  Doc. 128 at 18.

Based on the foregoing, this *Carr* factor weighs also against permitting the withdrawal of Defendant Luke's guilty plea.

### E.  Permitting Withdrawal Will Prejudice the Government

As to possible prejudice to the Government, the Court notes that it has been more than three years since the offenses alleged in the indictment occurred.  Such a long lapse in time may have impacted both the memories and availability of critical witnesses, particularly those of the alleged victims.  As previously stated, Defendant Luke is charged by indictment with one count of Conspiracy to Commit Sex Trafficking by Force, Fraud and Coercion and two counts of Sex Trafficking by Force, Fraud and Coercion.  Doc. 21 at 1-5.  Defendant Luke was arrested, and the alleged offenses first revealed, in February 2018, when he was purportedly found in a motel room with an adult female victim who reported that she was being held against her will and forced into prostitution by Defendant Luke.  Doc. 1 at 4-5 (*Criminal Complaint*).  Allegedly, others were victimized in similar fashion by Defendant Luke and members of his human trafficking organization.  Although Defendant Luke has not been finally convicted of these offenses, it is important to understand the nature of the allegations to put into perspective the difficult task of finding the victim-witnesses—who undoubtedly assumed this case was behind them based on Defendant Luke's guilty plea some 19 months ago—and notifying them that they now must testify against Defendant Luke at trial.

In any event, "the absence of a showing of prejudice to the government, by itself, should [not] be sufficient to mandate permission to withdraw a plea when, as here, no credible reason is

proffered." *Carr*, 740 F.2d at 345.  Thus, the Court has given relatively little weight to this *Carr* factor in light of the others discussed here.

This *Carr* factor also weighs against permitting Defendant to withdraw his guilty plea.

## IV. CONCLUSION

In light of the fact that the most significant *Carr* factors weigh against granting Defendant Luke's request to withdraw his guilty plea, as detailed herein, any inconvenience to the Court or waste of judicial resources, or lack thereof, would not alone or in combination change the inevitable conclusion.

For all the reasons outlined *supra*, Defendant's *Motion to Withdraw Guilty Plea*, Doc. 133, should be **DENIED**.

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**

**SO RECOMMENDED** on September 29, 2021.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE